IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DYMATIZE ENTERPRISES INC., | § § § | |
| Plaintiff, | | |
| vs. | § § § § § | CIVIL ACTION NO. 3:07-CV-907-M |
| REFLEX NUTRITION LIMITED, and JAMES PHILLIPS, Individually, | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Plaintiff's Motion for Extension of Time to Respond to Motion to Dismiss. Defendants Reflex Nutrition Limited ("Reflex") and James Phillips ("Phillips"), the Managing Director of Reflex, are residents of the United Kingdom. Defendants' principal contention is that their mere maintenance of websites accessible to Texas residents does not establish the minimum contacts necessary to support *in personam* jurisdiction. The Court agrees and **GRANTS** Defendants' Motion to Dismiss. Plaintiff's Motion for Extension requests additional time to discover evidence of Defendants' contacts with the State of Texas. Because Plaintiff fails to present factual allegations suggesting with reasonable particularity the possible existence of the requisite contacts,[1] Plaintiff's Motion is **DENIED**.

**FACTUAL BACKGROUND**

Plaintiff Dymatize Enterprises Inc. ("Dymatize") is a Texas corporation with its principal place of business in Farmers Branch, Texas. Defendant Reflex is a company organized under the laws of the United Kingdom, with its principal place of business in Hove, England. Phillips's

---

[1] *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3rd Cir. 2003).

Declaration indicates that: (1) Reflex's sole office is located in Hove, England; (2) Reflex is not registered to do business in Texas and does not have any shareholders, officers, directors, employees, or agents in Texas; (3) Reflex does not own any vehicles registered in Texas, or other real or personal property in Texas; and (4) Reflex does not have any business operations in Texas.

Defendant Phillips is a citizen of the United Kingdom. His Declaration states that: (1) he does not engage in, and is not registered to conduct, business in Texas; (2) he does not own any vehicles registered in Texas, or other real or personal property in Texas; and (3) he has no agents, other than counsel in this lawsuit, in Texas.

Dymatize and Reflex market competing dietary products, Elite Whey Protein and Instant Whey Protein, respectively. As their names suggest, these products contain whey concentrate, a high quality protein. Reflex promotes its supplements and publishes research on competitors' products, including Elite Whey Protein, on its two websites, http://www.whey-protein.com and http://www.reflex-nutrition.com.

Plaintiff alleges that Reflex published defamatory statements about Dymatize products on whey-protein.com. Similar statements were posted by Phillips on an independently owned and operated discussion board, bodybuilding.com. Three distinct sections of whey-protein.com featured the allegedly defamatory statements about the protein concentrations in Plaintiff's supplements: the *Welcome*, *Protein Test Results*, and *News* pages. Plaintiff also alleges that Phillips posted a hyperlink on bodybuilding.com, directing readers to a separate, unaffiliated website, which also contained the allegedly misleading statements about Plaintiff's products.

The Court's factual synopsis focuses on the aspects of the Reflex websites pertinent to the jurisdictional inquiry. These include the level of interactivity, as well as the "nature and

quality of the commercial activity," permitted by the websites. Reflex's site, whey-protein.com, is intended to serve as a "portal for accurate and up to date information including news, research, and production methods" for whey protein. The site compares the protein concentrations of competing dietary products, including Dymatize supplements. Reflex's other website, reflex-nutrition.com, is dedicated to promoting Reflex products. It includes on-line forms that visitors and interested distributors can submit to receive the Reflex newsletter and obtain more information about the company. The site also features hyperlinks to retailers selling Reflex supplements and includes periodic polls. Visitors cannot purchase Reflex products on-line at either website.

Shortly before filing this suit, Dymatize's CEO purchased Reflex products through three British vendors listed on reflex-nutrition.com.

## ANALYSIS

*Legal Standard*

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant, and the exercise of such jurisdiction by the forum state is consistent with due process, as guaranteed by the United States Constitution.[2] Because Texas's long-arm statute has been interpreted to extend to the limits of due process, the Court only needs to determine whether subjecting Defendants to suit in Texas would be consistent with the Due Process Clause of the Fourteenth Amendment.[3]

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections

---

[2] *See Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999); *Electrosource, Inc. v. Horizon Battery Technologies,* Ltd., 176 F.3d 867, 871 (5th Cir.1999) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990)).
[3] *Mink v. AAAA Development LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."[4]

The "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction."[5] Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the causes of action asserted.[6] General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic."[7] Because the Plaintiff does not specify a jurisdictional ground, the Court analyzes both general and specific jurisdiction.

Because the Court rules on Defendants' Motion to Dismiss without holding an evidentiary hearing, it accepts as true the uncontroverted allegations in the Complaint and resolves in favor of the Plaintiff any factual conflicts posed by the parties' declarations.[8] Therefore, Plaintiff's presentation of a *prima facie* case for personal jurisdiction will satisfy its burden."[9]

*Specific Jurisdiction*

Plaintiff's Complaint asserts commercial disparagement and defamation claims related to statements made by Reflex on whey-protein.com and by Phillips on bodybuilding.com.[10] There are no allegations that reflex-nutrition.com contained disparaging statements. Because for specific jurisdiction a court "only look[s] to the contact out of which the cause of action

---

[4] *Latshaw,* 167 F.3d at 211 (quoting *International Shoe Co. v. State of Washington,* 326 U.S. 310 (1945)).
[5] *Mink*, 190 F.3d at 336.
[6] *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984).
[7] *Id.* at n.9.
[8] *Latshaw,* 167 F.3d at 211 (footnotes omitted).
[9] *Id.*
[10] Specifically, Plaintiff's Complaint asserts commercial disparagement, unfair competition, and Texas common law business and product defamation.

arises",[11] the controlling question is whether whey-protein.com and the pages on bodybuilding.com containing the allegedly defamatory statements satisfy the minimum contacts test.[12] Accordingly, the specific jurisdiction inquiry does not consider the reflex-nutrition.com website.

In *Mink v. AAAA Development LLC*,[13] the Fifth Circuit adopted the "sliding scale" test first set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,[14] to evaluate the minimum contacts that must be established by a defendant's Internet activities.[15] Although *Mink* was a general jurisdiction case, Texas federal courts have interpreted it to apply in both general and specific jurisdiction analyses.[16]

As the Fifth Circuit made clear in *Mink*, the "nature and quality of commercial activity that an entity conducts over the Internet" is paramount.[17] The level of activity conducted falls into three categories. At one end of the spectrum are situations where a defendant enters into contracts with residents of other states and knowingly and repeatedly transmits computer files over the Internet. Jurisdiction over the defendant in the place where files are sent is proper in such a case. At the other end of the spectrum are situations where a defendant establishes a passive website that is in effect a vehicle to advertise on the Internet. Jurisdiction over the defendant in the state in which the plaintiff accesses the site does not exist merely because of defendant's Internet presence. In the middle of the spectrum are situations where a defendant has

---

[11] *Optimal Beverage Company, Inc. v. United Brands Company, Inc.*, No. H-06-1386, 2007 WL 654614, *4 (S.D. Tex. 2007).
[12] *See Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002) ("For specific jurisdiction we look only to the contact out of which the cause of action arises—in this case the maintenance of the internet bulletin board. Since this defamation action does not arise out of the solicitation of subscriptions or applications by Columbia, those portions of the website need not be considered."); *see also Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).
[13] 190 F.3d at 333.
[14] 952 F.Supp. 1119 (W.D.Pa.1997).
[15] *See Mink,* 190 F.3d at 336.
[16] *See, e.g.*, *id.*; *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.*, 106 F.Supp.2d 895, 899 n.10 (N.D.Tex. 2000).
[17] *Mink,* 190 F.3d at 336.

a website that allows a user to exchange information with a host computer.[18] Jurisdiction is determined in these types of cases by looking at the level of interactivity and commercial nature of the information exchanged on the website.

The Court concludes that the whey-protein.com site reflects a low "quality of commercial activity." Visitors cannot purchase products directly from Reflex through the website. Further, the comparisons of competitors' offerings on the *News* and *Protein Test Results* pages of the website are more informative than commercial. There is no mechanism for visitors to submit comments or questions on the three pages and, therefore, information only flows one way. These pages do not permit visitors to interact at all with the host computer. Whey-protein.com, therefore, sustains a low level of commercial activity.

*Revell v. Lidov*, involving a similar site, is also persuasive.[19] In *Revell*, the Fifth Circuit concluded that a website that permitted users freely to upload articles onto a virtual bulletin board, but that did not respond to users' submissions, was not sufficiently interactive to support jurisdiction. The whey-protein.com site is passive and does not permit *any* "exchange [of] information with a host computer." At most, it is an Internet advertisement and cannot confer specific jurisdiction over Reflex.[20]

Plaintiff maintains that Reflex's awareness of the possibility that Texas residents would read the statements on whey-protein.com proves that the company specifically targeted Texas readers and thereby subjected itself to suit in Texas. To demonstrate that Reflex was aware of its website's potential Texas audience, Plaintiff emphasizes the site's general accessibility to Internet users nationwide. Plaintiff also maintains that Reflex should have anticipated that Texas

---

[18] A host computer is a central computer, often located at a company's headquarters, that provides data and services to a network of other computers. These services may include data storage, file transfer, data processing, email, bulletin board services, and World Wide Web access.
[19] 317 F.3d 467, 476 (5th Cir. 2002).
[20] *Mink*, 190 F.3d at 337.

residents would visit the site. Plaintiff's argument is unpersuasive for two reasons. Whether Reflex directed its contents at Texas readers, like everyone else, is not the issue. The site's passive and non-interactive nature is the central aspect of the analysis.[21] Further, the mere possibility of a Texas audience does not establish purposeful availment by Reflex of the benefits and protections of Texas, which is necessary to satisfy due process. In other words, "the mere fact that the website contained defamatory information concerning plaintiff does not, absent some supporting evidence, mean that the defendant possessed the intent to target residents of the forum state," and thus does not satisfy due process.[22] Rather, Plaintiff must establish Reflex's intent to target or focus on Texas readers as distinguished from readers in other states.[23] Accordingly, several federal courts have rejected facts similar to those presented here as inadequate to sustain specific jurisdiction.[24]

*Revell* contains a particularly useful analysis.[25] There, Plaintiff argued that allegedly defamatory statements contained in an article available on the Columbia University Journalism Review Internet bulletin board supported a Texas federal court's exercise of jurisdiction, because the website was generally accessible to Internet users in Texas, and because the target of the defamatory statements was a Texas resident. The Court concluded these facts were insufficient to confer jurisdiction:

> The article written by Lidov about Revell contains no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers

---

[21] *Id.* at 336 ("With passive websites, personal jurisdiction is not appropriate.").
[22] *Barrett v. Combs*, 44 F.Supp.2d 717, 727 (E.D.Pa. 1999); *see also Luv'n Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 475 (5th Cir. 2006).
[23] *Revell*, 317 F.3d at 473; *Fix My PC, L.L.C. v. N.F.N. Associates, Inc.*, 48 F.Supp.2d 640, 644 (N.D.Tex. 1999).
[24] *Id.*; *Bailey v. Turbine Design, Inc.,* 86 F.Supp.2d 790, 794 (W.D.Tenn. 2000) (finding that allegedly defamatory statements about Plaintiff, which "were merely posted on the website to be viewed by whomever cared to do so," were insufficient to confer jurisdiction when "there was no evidence that the defendants had any contacts with the forum state other than the posting of the site."); *Barrett*, 44 F.Supp.2d at 727 (finding that Defendant's posting of allegedly defamatory statements on its webpage and on an on-line discussion group generated "merely fortuitous" contacts with Texas insufficient to support jurisdiction).
[25] *Revell*, 317 F.3d at 471.

as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike *Calder*, in which the article contained descriptions of the California activities of the plaintiff, drew upon California sources, and found its largest audience in California.[26]

Plaintiff's attempt to distinguish *Revell* from the instant case is unavailing. Plaintiff contends that the fact that Plaintiff was incorporated in Texas made it more probable that Texas readers would view whey-protein.com than was the case in *Revell*. However, in *Revell*, Plaintiff's Texas residency was determined to be insufficient to show that the Defendant specifically targeted Texas readers and, therefore, was subject to suit in a Texas court. Plaintiff fails to adduce any evidence that statements on whey-protein.com were directed at Texas readers. For example, Plaintiff does not establish that: (1) Texas constitutes a principal consumer base for Reflex products; (2) whey-protein.com makes any reference to Texas, or directs visitors to Texas retailers; (3) Reflex has engaged in any print, radio, television, or Internet advertising targeting Texas residents; or (4) Reflex has in any way specifically encouraged Texas residents to visit whey-protein.com. Hence, allegedly defamatory statements posted on whey-protein.com do not confer specific jurisdiction over Reflex.[27]

Plaintiff's second basis for specific jurisdiction is Phillips's allegedly defamatory posting on an independent discussion board on bodybuilding.com. In *Archer & White v. Tishler,* Judge Fitzwater of this Court rejected plaintiff's contention that defamatory statements posted by the defendant on an independent discussion board, accessible to Internet users nationwide, established that the defendant had purposefully availed himself of the benefits and protections of

---

[26] *Id.* at 473 (citing *Calder v. Jones,* 465 U.S. 783, 788 (1984)) (internal citation omitted).
[27] This Court's application of *Mink* also precludes jurisdiction under Rule 4(k)(2), which authorizes personal jurisdiction over a foreign defendant if the defendant has minimum contacts with the United States as a whole but insufficient contacts with any one state. Reflex's mere maintenance of a website accessible by United States residents does not establish the requisite contacts with the United States to support jurisdiction. *See Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002) (finding that Defendant's operation of a website containing company and product information and links to its U.S. subsidiaries does not provide sufficient grounds for the exercise of personal jurisdiction under Rule 4(k)(2)).

Texas.[28] The court emphasized that nothing on the website evidenced Defendant's intent "to target or focus on Texas readers as distinguished from readers in other states."[29] The Court finds the analysis in *Archer* persuasive on the material issue of whether Phillips purposefully directed his comments at Texas readers. Here, Plaintiff fails to establish that the bodybuilding.com readership is predominantly from Texas, or that either bodybuilding.com or Phillips specifically targeted Texas residents. Accordingly, Phillips's posting on bodybuilding.com does not establish specific jurisdiction over either Defendant.

*(1) General Jurisdiction*

The Court next determines whether Reflex or Phillips engaged in "continuous and systematic contacts" sufficient to establish general jurisdiction over either Defendant.[30] The *Mink* framework also governs the general jurisdiction analysis. General jurisdiction requires consideration of all of a defendant's contacts with the forum state rather than solely those giving rise to the plaintiff's causes of action. Here, Plaintiff's assertion of personal jurisdiction is predicated on Reflex's maintenance of its websites, whey-protein.com and reflex-nutrition.com, Phillips's posting on bodybuilding.com, and on the sale and shipment of three containers of Reflex product to Plaintiff's CEO by British vendors listed on reflex-nutrition.com. Plaintiff does not allege any other nexus between the Defendants and Texas.

To support its focus on Reflex's websites as a basis for general jurisdiction, Plaintiff emphasizes the informational exchanges between users and the host computers permitted on the two sites. Reflex-nutrition.com visitors may electronically enroll to receive email newsletters from the company, participate in on-line polls, and submit informational requests. Further, the reflex-nutrition.com site provides hyperlinks to British retailers selling Reflex products. An

---

[28] *Archer & White v. Tishler*, No. 3:03-CV-0742-D, 2003 WL 22456806, *3 (N.D.Tex. 2003).
[29] *Id.*
[30] *American Eyewear, Inc.*, 106 F.Supp.2d at 899.

analysis of district and appellate decisions addressing similar websites, however, convinces the Court that the exercise of general jurisdiction is inappropriate here.

Another case in this district rejecting personal jurisdiction focused on a website's capacity to support electronic purchases and other on-line, commercial transactions.[31] Significantly, the Reflex sites lack any such capacity, but does have hyperlinks to British sellers of Reflex products. Plaintiff maintains that supplying these hyperlinks is indistinguishable from directly processing electronic transactions. Plaintiff's position, however, is insupportable under the Fifth Circuit's holding in *Mink v. AAAA Development LLC*.[32]

*Mink* suggested that a website's capacity to process transactions internally is of controlling significance:

> While the [Defendant AAAA's] website provides users with a printable mail-in order form, AAAA's toll-free telephone number, a mailing address and electronic mail ("email") address, orders are not *taken through AAAA's website*. This does not classify the website as anything more than passive advertisement which is not grounds for the exercise of personal jurisdiction.[33]

Subsequent district court cases have similarly held that merely providing mail-in order forms or a toll-free order number on a website does not support jurisdiction.[34] Plaintiff's asserted basis for jurisdiction, however, is even more tenuous than the jurisdictional grounds alleged in these cases, because the hyperlinks here do not facilitate transactions between visitors and Reflex, but rather direct users to British retailers. Hence, the hyperlinks reflect a lower "quality of commercial

---

[31] *Fix My PC, L.L.C.*, 48 F.Supp.2d at 643 ("At one end of the sliding scale are defendants who are conducting their businesses over the Internet, entering into contracts with residents of other states.").
[32] 190 F.3d at 336.
[33] *Mink*, 190 F.3d at 336 (emphasis added). In *Benusan Restaurant Corporation v. King*, defendant's website, which referred visitors to unaffiliated local ticket outlets, did not support specific jurisdiction. These referrals are analogous to the links to e-retailers found on the Reflex websites. 937 F.Supp. 295, 301 (S.D.N.Y. 1996).
[34] *See, e.g.*, *Optimal Beverage Company, Inc.*, 2007 WL at *4; *Rannoch, Inc. v. Rannoch Corporation*, 52 F.Supp.2d 681, 683 (E.D.Va. 1999) (Defendant's website providing contact information, including toll-free number, fax number, address, and email address, as well as an interactive form with spaces to submit comments, did not meet the minimum contacts test).

activity" with Reflex than websites, considered and rejected by other courts, that instructed visitors on how to order products from defendants via mail or the telephone.

The polling feature on reflex-nutrition.com is also insufficient to support general jurisdiction. As described, the Reflex web polls, which permit users to cast an electronic vote in response to simple questions, involve a one-way flow of information: there is no allegation that the website responds to the poll results or permits participants to elaborate on their answers.[35] Hence, this site resembles Columbia University's website in *Revell*, where "[o]nce the information is posted, the site is completely passive." Reflex-nutrition.com, in fact, is even less interactive than Columbia University's site. In *Revell*, visitors could "go to the site, read the information, and if they choose, post additional information." There is no evidence, however, that the poll participants here could post additional questions or comments after casting their vote. Therefore, poll participants' sole communication with the website – selecting from a set of potential responses to poll questions – involved a less robust exchange of information than in *Revell*. Thus, the *Revell* court's conclusion that the absence of "truly interactive features" made the Columbia site "fit[] perfectly into the passive website extreme of the *Mink* sliding scale" is persuasive here.

Other aspects of Reflex's websites similarly fail to confer general jurisdiction. For example, visitors' ability to subscribe to electronic newsletters on reflex-nutrition.com does not increase the site's level of interactivity sufficiently to provide a basis for jurisdiction under the *Mink* sliding scale.[36] Finally, Phillips's posting of allegedly defamatory statements on the public

---

[35] One poll question asks: "When it comes to new supplements that are designed specifically for weight gain, which of the following best describes your attitude: (1) I won't buy it if it tastes bad, or (2) Results are more important than taste."

[36] *People Solutions, Inc. v. People Solutions, Inc.*, No.399-CV-2339-L, 2000 WL 1030619, *3 (finding that Defendant's website, which enabled users to take and score performance tests, download product demos, submit a registration form to receive product brochures and test demonstration diskettes, did not satisfy the minimum contacts test); *Optimal Beverage Company, Inc.*, 2007 WL at *1 (finding that the minimum contacts test was not met when

discussion board, bodybuilding.com, does not establish the requisite minimum contacts to support general jurisdiction over either Phillips or Reflex.[37]

Plaintiff's final asserted basis for jurisdiction is the sale and shipment of Reflex products to Plaintiff's CEO by three British vendors listed on reflex-nutrition.com.[38] However, these few sales do not constitute "continuous and systematic contacts" with the State of Texas sufficient to support general jurisdiction.[39] As the Court emphasized in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."[40]

*(2) Plaintiff's Motion to Extend Time*

Plaintiff moves for a time extension to respond to the Motion to Dismiss, to enable it to complete jurisdictional discovery. The Motion is **DENIED** because Plaintiff fails to present factual allegations suggesting with reasonable particularity that either Defendant has the requisite contacts with Texas or the United States to support jurisdiction.[41]

Turning first to Plaintiff's request for discovery of Reflex's contacts, Plaintiff does not specify the particular contacts to be established by discovery. Plaintiff also fails to allege

---

defendant's website merely permitted users to submit their contact information, presumably to receive company materials).

[37] *See Revell*, 317 F.3d at 476.

[38] Because Plaintiff's defamation claims do not arise from the sales to Dymatize's CEO, the Court only considers whether these sales support the existence of general jurisdiction.

[39] *See Hall*, 466 U.S. at 418; *American Eyewear, Inc.*, 106 F.Supp.25 at 899. In *PHC-Minden LP v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex., 2007), the Texas Supreme Court underscored the substantial contacts required to support general jurisdiction: "A general jurisdiction inquiry, therefore, is very different from a specific jurisdiction inquiry and involves a more demanding minimum contacts analysis with a substantially higher threshold. Usually, the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." For the same reason, these few sales also fail to confer personal jurisdiction under Fed. R. Civ. P. 4(k)(2).

[40] 466 U.S. at 418.

[41] *Toys "R" Us, Inc.*, 318 F.3d at 456. *See supra* notes 27 and 39, at 8, 12 for the Court's discussion of Defendants' contacts with the United States under Rule 4(k)(2).

particular facts contravening Phillips's declarations that (1) Reflex has no offices in the United States; (2) Reflex does not compete for business in Texas or elsewhere in the United States; (3) Reflex is not registered to do business in Texas and does not have any shareholders, officers, directors, employees, or agents in Texas; (4) Reflex does not own any vehicles registered in Texas, or other real or personal property in Texas; and (5) Reflex does not have any business operations in Texas. Thus, Plaintiffs' sole allegations— that the Dymatize CEO purchased Reflex products from British vendors, and that "there are likely undiscovered communications between Defendants and their distributors that reveal discussions by Defendants of sale of products in the United States and/or in Texas"— do not suggest with reasonable particularity the possibility that Reflex's contacts with Texas or the United States are sufficient to support jurisdiction. Further, to the extent Plaintiff seeks additional discovery regarding the Reflex websites' features or content, the request is denied. The Reflex sites were accessible to the Plaintiff and comprehensively analyzed in Plaintiff's Response. There is no basis for the conclusion that additional discovery of Reflex's websites is needed.

Plaintiff also fails to plead particular facts suggesting Phillips's contacts with Texas or the United States. Indeed, Plaintiff does not allege facts contradicting Phillips's statements that (1) he does not engage in, and is not registered to conduct, business in Texas; (2) he does not own any vehicles registered in Texas, or other real or personal property in Texas; and (3) he has no agents, other than counsel in this lawsuit, in Texas. Absent particular allegations suggesting Phillips's contacts with Texas or the United States, Plaintiff's request for additional discovery is unavailing.

## CONCLUSION

The Court **DENIES** Plaintiff's Motion for Extension of Time to Respond to Motion to Dismiss and **GRANTS** Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

**SO ORDERED** this 17th day of January 2008.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS